## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

-------------------------------------------------------x
**JOHN JAMES STAVOLA**    :    **CASE ACTION NO.**
**Plaintiff**         :
              :    **3:17-cv-00087**
              :
              :
**SEI/AARON'S INC., and MARC**  :
**DEBROISSE**        :
    **Defendant**     :    **JULY 25, 2017**
-------------------------------------------------------x

### AMENDED COMPLAINT

**COUNT ONE**:    **Sexual Harassment and Hostile Working Environment in violation of CGS Section 46a-60(a)(1) (8) v. SEI / Aaron's Inc.**

  1.   At all times set forth herein the plaintiff, John James Stavola, was a resident of the Town of East Berlin, State of Connecticut.

  2.   The Defendant, SEI / Aaron's Inc., (hereinafter referred to as "Defendant Company"), is a foreign corporation organized under the laws of the State of Georgia. Defendant operates numerous business locations throughout the state of Connecticut, including one located at 480 Elm Street, West Haven, Connecticut, 06516.

  3.   The Defendant, Marc Debroisse, (hereinafter referred to as "Defendant Deroisse), was and is a resident of the Town of Cheshire, State of Connecticut.

  4.   Plaintiff filed an administrative complaint with the Commission on Human Rights and Opportunities against both defendants on or about September 1, 2016. Plaintiff received a Release of Jurisdiction letter dated December 21, 2016. This complaint is brought within ninety (90) days of the Release of Jurisdiction letter, which is attached hereto as **Exhibit A**.

  5.   The Defendant Company is a retailer of furniture, consumer electronics, and home appliances via lease and sale.

6.     The Defendant hired the plaintiff on or about November 28, 2013.  Plaintiff was hired for the position of "Manager in Training."  The plaintiff remained in that position until February 28, 2015, when plaintiff was promoted to the position of "General Manager."

7.     Throughout the plaintiff's employment with the defendant company, he was considered a good and dependable employee of the Defendant Company.  This is evidenced by his promotions, numerous merit increases in his salary, and the quarterly bonuses that defendant awarded the plaintiff.

8.     Throughout the term of Plaintiff's employment, he was a full-time employee, and as such, he worked at least 1,250 hours in each year of his employment.

9.     Plaintiff worked at least 1,250 hours for the Defendant in a twelve-month period prior to July of 2016.

10.     Throughout the term of Plaintiff's employment with the defendant, the defendant employed fifty (50) or more employees within a seventy five (75) mile radius of the location Plaintiff worked at for the Defendant.

11.     Throughout the plaintiff's employment the plaintiff reported to Mr. David Edwards, president of Defendant Company, as well as Defendant Debroisse, Defendant Company Regional Manager.

12.     Throughout the plaintiff's employment, Ms. Kate Gordon acted as the defendant's Human Resources manager.

13.     As a General Manager for the defendant company, the plaintiff was responsible for an entire store / location and responsible to manage approximately eleven (11) defendant employees.

14.    After plaintiff was promoted to the position of General Manager, and began to report directly to Mr. Debroisse, Mr. Debroisse subjected the plaintiff to an extremely severe and pervasive course of sexual harassment and an extremely hostile working environment.

15.    After becoming a GM, Debroisse starting to talk to the plaintiff in the course of the plaintiff's employment about the plaintiff's sexuality and continuously harassed the plaintiff about whether he was a homosexual and liked to be with men sexually.

16.    For example, Debroisse relentlessly harassed the plaintiff, asking plaintiff every day that he was in the plaintiff presence throughout the entire course of the workday, in front of other defendant employees, including but not limited to the following:

   a.  Do you like men?

   b.  Do you wear women's clothing on the weekends;

   c.  You must hangout at the toolbox (a gay bar);

   d.  Don't get too excited John, there are guys out there;

17.    Defendant Debroisse constantly harassed the plaintiff about the plaintiff sexuality, every time that he was present in the plaintiff store, in a humiliating manner in front of other defendant employees, including the plaintiff subordinates / direct reports. Each time he harassed the plaintiff the plaintiff informed Debroisse that he did not appreciate it and asked that he stop.  Over time the harassment only got worse.

18.    Defendant Debroisse's harassment was focused on the plaintiff and it was so severe and open that other defendant employees frequently commented to the plaintiff or recognized that his treatment towards the plaintiff was not appropriate.

19.    Staring on or about October 2015, when Debroisse received notice that the plaintiff's fiancé was pregnant with the plaintiff's child, the harassment and hostility only got worse.

20.   For example, Debroisse made comments to the plaintiff, out loud so other defendant employees could hear, such as:

    a.  Looks like you are tired, did you have a long night fucking your roommate in the ass?

    b.  Do you suck cock?

    c.  Watch out, don't let your fiancé fuck your best friends;

    d.  Comments about plaintiff doing sexual favors to men and women;

    e.  You wear women's underwear don't you?

    f.  You seem stressed out, it must be because your fiancé got knocked up by a West Haven townie;

    g.  How is it going to feel when you are going to have to pay $250,000 in child support over the course of your life?

    h.  You wear a wig when you go to gay bars?

    i.  How are you going to feel when your fiancé goes out to lunch with her ex-husband with your baby inside her?

21.   Each time that Defendant Debroisse made such a statement to the plaintiff the plaintiff was extremely humiliated because they were always made with the intent to cause ridicule and humiliation because they were personal to only the plaintiff, made with the intent to attack the plaintiff sexuality, and attacked the plaintiff fiancé, their relationship and even the plaintiff's unborn child.

22.   The statements by Debroisse were made due to Debroisse's perception that Plaintiff was not manly enough and therefore he perceived that Plaintiff must wear women's underwear and must be gay.

23.     On one occasion in early 2016, Defendant Debroisse stated to the plaintiff in front of other defendant employees, "you know after she (the plaintiff fiancé) has the baby, it is going to get sloppy down there (referring to her vagina), you are going to have to use your hand to please her."

24.     Defendant Debroisse also ridiculed the plaintiff about the plaintiff's appearance and the plaintiff's weight, calling the plaintiff fat and attacking the plaintiff physical appearance.  For example, Debroisse compared the plaintiff with people that are extremely obese – this comment was made in front of approximately 9-12 company employees, including the executive assistant to the president.

25.     Debroisse also made comments such as whether the plaintiff knew what color the shoes he was wearing, inferring that the plaintiff was so obese that he was not able to see his shoes over the size of his stomach.

26.     Throughout the beginning of 2016, when the harassment started to increase in severity and frequency, and included the plaintiff fiancé and baby, the plaintiff started to experience anxiety when dealing with Defendant Debroisse.   Plaintiff complained to Debroisse multiple times that he did not appreciate the harassment, that it was creating a very hostile and uncomfortable working environment, and plaintiff asked for it to stop. Despite the plaintiff's complaints and requests, the harassment continued.

27.     On or about May 2016, the plaintiff's store performed the best in the State of Connecticut out of 109 stores.    Plaintiff won an award or was recognized for this achievement by Defendant Company. In response Defendant Debroisse failed to recognize the plaintiff's achievement but instead harassed plaintiff about the plaintiff's performance and inventory in front of defendant employees.

28.     In the midst of an exchange that included a complaint by the plaintiff about how he was being treated at work, Defendant Debroisse threatened the plaintiff and his employment, stating: "Do you not understand that I can fucking fire you right now John?"

29.     After the exchange, the plaintiff walked away out of frustration.  In response Defendant Debroisse again threatened the plaintiff employment, yelling: "don't you fucking walk away from me I will fire you right now."

30.     Thereafter, the harassment, hostile work environment and discrimination continued.

31.     As a result, on or about June 6, 2016, at approximately 8:09 am, the plaintiff personally went to the Defendant Company HR department to file a formal complaint against Debroisse.  On said date and time the plaintiff met with Kate Gordon.  During the meeting she took notes of the issues and complaints as outlined above. In response, Gordon stated, "I need to get the President of the company involved."

32.     Upon information and belief, Defendant Debroisse and the defendant company President, Mr. Edwards, are close personal friends.

33.     During said meeting, after informing Mr. Edwards of the harassment and hostile work environment at the hands of Defendant Debroisse, Edwards dismissed the plaintiff's complaint and stated: "you have a close relationship with Marc, but even so what he said was wrong, a line was overstepped."

34.     In response the plaintiff assured Mr. Edwards in no uncertain terms that he was in no way whatsoever friends with Debroisse, that they only had a working relationship, and that the conduct was completely inappropriate for the workplace.

35.     At the conclusion of the meeting with Edwards and Gordon, Edwards stated that he would talk to Marc to address the situation and the plaintiff's concerns.

36.     Following the meeting Edwards spoke with Mike Hill, plaintiff's co-worker, to investigate the plaintiff's complaints. Upon information and belief, Mr. Hill confirmed the plaintiff's complaints and the harassment and hostile working environment that the plaintiff was being subjected to.

37.     Later that same day, Mr. Edwards called the plaintiff over the phone and asked plaintiff, "what would you like me to do about this?"  In response plaintiff stated that all he wanted was to go to work and do his job and not be harassed, discriminated against and spoken to in such a foul and derogatory manner.  Plaintiff stated that he did not want anyone to lose their job, he just wanted the environment to be ameliorated.

38.     Later that evening, Mr. Edwards called the plaintiff while the plaintiff was driving home and stated, "none of this needs to be said to anyone including your roommate. This does not leave our inner circle (Gordon, Edwards and the plaintiff)."

39.     Thereafter, despite the plaintiff's complaints to the president and defendant company HR, the harassment and hostile work environment continued.

40.     Defendant Debroisse became aware that the plaintiff complained to Edwards and Gordon in person about his treatment towards the plaintiff.  As a result, defendant Debroisse thereafter engaged in a relentless course of retaliation and continued harassment in an effort to ultimately terminate the plaintiff's employment.

41.     On or about the end of June 2016, Plaintiff approached Debra Charles, another Defendant Company HR representative.  Plaintiff stated to her that he and his fiancé were expecting the birth of their child in early July 2016, and that I desired to take a parental leave of absence for the birth of the plaintiff's son.  Plaintiff specifically asked Ms. Charles whether he had the right to take leave under the FMLA.

7

42.    In response to the plaintiff's request for FMLA leave, Ms. Charles stated, "you do not qualify for FMLA because the company does not have 50 employees in the store that you work."   Given the denial, in response the plaintiff asked whether he could take a paternity leave or whether he had vacation time available that he could use so that he could take parental leave for the birth of the plaintiff's son.   In response, Defendant informed the plaintiff that he had only one week of vacation available to use for the birth of his son.

43.    Defendant specifically informed the plaintiff that while he was out of work for the birth of his son that his job was secure and that his leave was job protected.

44.    Plaintiff left work on July 8, 2016 at approximately 3:00pm, to take a leave of absence for the birth of his son.

45.    As a result of the plaintiff's leave of absence from work, Defendant Debroisse was required to cover the plaintiff's work at the store that plaintiff managed and essentially perform the plaintiff's job duties while the plaintiff was out of work on leave.

46.    Soon after the plaintiff commenced his leave of absence, Defendant Debroisse assigned Manuel Correa to replace the plaintiff and perform the plaintiff's job while he was on the leave of absence.

47.    Upon information and belief, Mr. Correa and Debroisse's have a family relationship or in the alternative, a friendship / relationship outside of work.

48.    On or about July 17, 2016, while the plaintiff was out of work on what defendant stated was an approved leave of absence for the birth of the plaintiff's son, plaintiff received a telephone call from three of his co-workers. These defendant employees informed plaintiff that defendant managerial employees were making efforts to fabricate a reason to terminate the plaintiff's employment while he was out of work on leave for the birth of his son.

49.     During the same phone call the defendant employees informed the plaintiff that on the upcoming Monday, when plaintiff showed up to work, President Edwards and Defendant Debroisse were going to be at the store to confront the plaintiff about the plaintiff's employment and raise as many issues as they can.

50.     The next day, July 18, 2016, plaintiff reported to work at 6:30am.  Defendant Debroisse showed up at the plaintiff store at about 7:00am. After he arrived to work on this date, Defendant Debroisse specifically made an effort to ignore the plaintiff and not engage in any communication with him, which was not his usual practice.

51.     Thereafter, at approximately 9:55am, Mr. Edwards appeared at the plaintiff's store. Edwards approached the plaintiff and instructed plaintiff to attend a meeting with him. During said meeting Edwards accused the plaintiff of performance deficiencies related to the plaintiff's inventory and a bed bug issue.

52.     During said meeting Edwards stated to the plaintiff that while he was out of work during the plaintiff's Paternity Leave, an associate / employee of the defendant made an accusation about the plaintiff's performance and accused the plaintiff of conduct in violation of company policy for an instance that allegedly happened in April 2016, four months earlier.

53.     At the conclusion of the meeting President Edwards stated to the plaintiff that the plaintiff's employment was terminated because, "there are too many question marks, your integrity is questionable."

54.     The defendant's reason for the termination of the plaintiff's employment was a pretext for unlawful harassment, hostile working environment, discrimination and retaliation.

55.     The defendant's reason for termination of the plaintiff's employment was a pretext for unlawful gender discrimination based on Debroisse's perception that Plaintiff was not manly enough or did not adequately fit into the stereotype of a man.

56.     The plaintiff was the subject of repeated, pervasive, offensive, and embarrassing unlawful harassment in the course of his employment.

57.     The defendant's conduct had the effect of substantially interfering with the plaintiff's work performance, and created an intimidating, hostile, and offensive working environment.

58.     The Defendant Company wrongfully terminated the Plaintiff's employment.

59.     The foregoing conduct of the Defendant constitutes unlawful discrimination and unlawful termination of employment in violation of the Connecticut Fair Employment Practices Act.

60.     As a result of the foregoing unlawful conduct of the Defendant, Plaintiff has suffered and will continue to suffer lost wages and fringe benefits, as well as other consequential losses and damages.

61.     As a further result of the foregoing unlawful conduct of the Defendant, the Plaintiff has expended attorney's fees and costs in order to secure the right to which he is entitled.

62.     As a further result of the foregoing unlawful conduct of the Defendant, the Plaintiff has suffered and will continue to suffer in the future, considerable emotional and psychological pain and suffering.

**COUNT TWO:**       **Sex / Gender Discrimination and Hostile Working Environment in violation of CGS Section 46a-60(a)(1) v. SEI / Aaron's Inc.**

1.     The plaintiff repeats and re-alleges paragraphs 1 through 54 of Count One as paragraphs 1 through 54 of this Second Count as if fully restated herein.

10

55.     The Defendant, through its agents, servants and or employees, subjected the plaintiff to a severe discrimination, a hostile working environment, and ultimately terminated the Plaintiff's employment on the basis of his sex/gender.

56.     The defendant failed to conduct a proper investigation, or any investigation whatsoever, as to Defendant Debroisse's conduct.

57.     The foregoing conduct of the Defendant constitutes unlawful discrimination, harassment and termination of employment in violation of the Connecticut Fair Employment Practices Act.

58.     As a result of the foregoing unlawful conduct of the Defendant, through its agents, servants, and/or employees, the Plaintiff has suffered and will continue to suffer lost wages and fringe benefits, as well as other consequential losses and damages.

59.     As a further result of the foregoing unlawful conduct of the Defendant, through its agents, servants and/or employees, the Plaintiff has expended attorney's fees and costs in order to secure the right to which he is entitled.

60.     As a further result of the foregoing unlawful conduct of the Defendant, through its agents, servants and/or employees, the Plaintiff has suffered and will continue to suffer in the future, considerable emotional and psychological pain and suffering.

**<u>COUNT THREE</u>:** **Sexual Orientation Discrimination and Hostile Working Environment in violation of CGS Section 46a-81(c) v. SEI / Aaron's Inc.**

1.     The plaintiff repeats and re-alleges paragraphs 1 through 54 of Count One as paragraphs 1 through 54 of this Third Count as if fully restated herein.

55.     The Defendant, through its agents, servants and or employees, subjected the plaintiff to a severe discrimination, a hostile working environment, and ultimately terminated

the Plaintiff's employment on the basis of his sexual orientation or perceived sexual orientation.

56.    The foregoing conduct of the Defendant constitutes unlawful discrimination, harassment and termination of employment in violation of the Connecticut Fair Employment Practices Act.

57.    As a result of the foregoing unlawful conduct of the Defendant, through its agents, servants, and/or employees, the Plaintiff has suffered and will continue to suffer lost wages and fringe benefits, as well as other consequential losses and damages.

58.    As a further result of the foregoing unlawful conduct of the Defendant, through its agents, servants and/or employees, the Plaintiff has expended attorney's fees and costs in order to secure the right to which he is entitled.

59.    As a further result of the foregoing unlawful conduct of the Defendant, through its agents, servants and/or employees, the Plaintiff has suffered and will continue to suffer in the future, considerable emotional and psychological pain and suffering.

**COUNT FOUR:**    **Retaliation in violation of CGS § 46a-60(a)(4) v. SEI / Aaron's Inc.**

1.    The plaintiff repeats and re-alleges paragraphs 1 through 54 of Count One as paragraphs 1 through 54 of this Fourth Count as if fully restated herein.

55.    The plaintiff engaged in numerous protected employment activities and was retaliated against and his employment was swiftly terminated as a result.

56.    The foregoing conduct of the Defendant constitutes retaliation in violation of the Connecticut Fair Employment Practices Act.

57.     As a result of the foregoing unlawful conduct of the Defendant, through its agents, servants and/or employees, the Plaintiff has suffered and will continue to suffer lost wages and fringe benefits, as well as other consequential losses and damages.

58.     As a further result of the foregoing unlawful conduct of the Defendant, through its agents, servants and/or employees, the Plaintiff has expended attorney's fees and costs in order to secure the right to which he is entitled.

59.     As a further result of the foregoing unlawful conduct of the Defendant, through its agents, servants and/or employees, the Plaintiff has suffered and will continue to suffer in the future, considerable emotional and psychological pain and suffering.

**COUNT FIVE:**     **Retaliation in violation of the Family Medical Leave Act 29 U.S.C. § 2612 *et seq.* vs. SEI / Aaron's Inc.**

1.     The plaintiff repeats and re-alleges paragraphs 1 through 54 of Count One as paragraphs 1 through 54 of this Fifth Count as if fully restated herein.

55.     The Plaintiff was an eligible employee under the FMLA, the Plaintiff was qualified to take leave under the FMLA, and the Plaintiff gave notice to the Defendant that he required a medical leave of absence for the birth of his son.

56.     The Plaintiff was retaliated against and subject to adverse employment action for attempting to exercise and/or exercising his rights under the FMLA.

57.     As a result of the Defendant Company's violation of the FMLA, subjecting the Plaintiff to adverse employment action, and terminating the Plaintiff's employment, the Plaintiff has lost a considerable amount of time from gainful employment, and he has suffered a substantial loss of income, health benefits, and/or retirement benefits, and will continue to suffer the loss of same into the future, all to his loss and detriment.

58.     Furthermore, as a result of the Defendant Company's actions, as aforesaid, the Plaintiff has been forced to spend legal fees and costs in order to obtain the rights to which he is entitled.

**COUNT SIX:**     **Interference in violation of the Family Medical Leave Act 29 U.S.C. § 2612 *et seq.* vs. SEI / Aaron's Inc.**

1.     The plaintiff repeats and re-alleges paragraphs 1 through 54 of Count One as paragraphs 1 through 54 of this Sixth Count as if fully restated herein.

55.     The Plaintiff was an eligible employee under the FMLA, the Plaintiff was a qualified employee and entitled to a leave under the FMLA, the Plaintiff gave notice to the defendant that he required a medical leave of absence and the defendant interfered with the plaintiff's rights under the FMLA and defendant denied the Plaintiff benefits to which he was entitled under the FMLA.

56.     The Defendant intentionally interfered with the plaintiff's right to take leave under the FMLA to deny him a leave, and defendant further replaced the plaintiff while he was out on leave and terminated the plaintiff for a pretextual reason.

57.     The aforementioned conduct of the Defendant, through its agents, servants, and/or employees, constitutes interference in violation of the FMLA.

58.     As a result of the aforementioned conduct of the Defendant, through its agents, servants and/or employees, the Plaintiff has lost a considerable amount of time from gainful employment, has suffered a substantial loss of income, health benefits, and/or retirement benefits, and will continue to suffer the loss of same into the future, all to his loss and detriment.

59.     As a further result of the aforementioned conduct of the Defendant, through its agents, servants and/or employees, the Plaintiff has been forced to incur attorney's fees and costs in order to obtain the rights to which she is entitled.

**COUNT SEVEN:     Intentional Infliction of Emotional Distress vs. SEI / Aaron's Inc.**

1.     The Plaintiff repeats and re-alleges paragraphs 1 through 54 above and incorporates them as paragraphs 1 through 54 of this Seventh Count as if fully stated herein.

55.     The Defendant's aforementioned conduct, through its agents, servants and/or employees, was extreme and outrageous.

56.     The foregoing actions of the Defendant, through its agents, servants and/or employees, was intended to inflict emotional distress upon the Plaintiff and the defendant knew, or in the exercise of reasonable care, should have known, that emotional distress was the likely result of the aforementioned conduct.

57.     Defendant Debroisse was in such a position of authority within the Defendant Company such that the Defendant Company was his alter ego and his actions were those of the Defendant Company. Consequently, the Defendant Company is liable for Debroisse's intentional actions to the same degree as Debroisse.

58.     As a result of the Defendant's conduct, through its agents, servants and/or employees, the Plaintiff has suffered and will continue to suffer in the future, considerable emotional and psychological pain and suffering.

**COUNT EIGHT:     Intentional Infliction of Emotional Distress vs. Marc Debroisse**

1.     The Plaintiff repeats and re-alleges paragraphs 1 through 54 above, and incorporates them as paragraphs 1 through 54 of this Eighth Count as if fully stated herein.

55.     The aforementioned actions of Defendant Debroisse were extreme and

15

outrageous.

56.    The foregoing conduct of Defendant Debroisse was intended to inflict emotional distress upon the Plaintiff and Debroisse knew that emotional distress was the likely result of the aforementioned conduct.

57.    As a result of the Defendant's aforementioned conduct, the Plaintiff has suffered and will continue to suffer in the future, considerable emotional and psychological pain and suffering.

**COUNT NINE:**      **Aiding, Abetting, Inciting, Compelling, or Coercing Discriminatory Acts in violation of Conn. Gen. Stat. 46a-60(a)(5) vs. Marc Debroisse**

1.    The Plaintiff repeats and re-alleges paragraphs 1 through 54 above and incorporates them as paragraphs 1 through 54 of this Ninth Count as if fully stated herein.

55.    The foregoing conduct of the Defendant constitutes aiding, abetting, inciting, compelling or coercing discriminatory employment practice in Violation of Conn. Gen. Stat. § 46a-60(a)(5).

56.    As a result of the foregoing unlawful conduct of the Defendant, Plaintiff has suffered, and will continue to suffer, lost wages and fringe benefits, as well as other consequential losses and damages.

57.    As a further result of the foregoing unlawful conduct of the Defendant, the Plaintiff has expended attorney's fees and costs in order to secure the rights to which he is entitled.

58.    As a further result of the foregoing unlawful conduct of the Defendant, the Plaintiff has suffered and will continue to suffer in the future, considerable emotional and psychological pain and suffering.

THE PLAINTIFF
JOHN JAMES STAVOLA


By: __//s// Megan L Michaud //s//__
Megan L Michaud, Esq. (28813)
Cicchiello & Cicchiello LLP
364 Franklin Avenue
Hartford, CT 06114
Tel: (860) 296-3457
Fax: (860) 296-0676
Juris No. 419987
Email: mmichaud@cicchielloesq.com

*Wherefore*, the Plaintiff requests that this Court assume jurisdiction over this matter and provide her with the following relief:

1. Monetary damages;

2. Reinstatement of employment or front pay;

3. Punitive damages;

4. Reasonable attorney's fees and costs;

5. Liquidated damages pursuant to the FMLA;

6. Such other relief the Court deems just and reasonable.

THE PLAINTIFF
JOHN JAMES STAVOLA

By: _//s// Megan L Michaud //s//_
Megan L Michaud, Esq. (28813)
Cicchiello & Cicchiello LLP
364 Franklin Avenue
Hartford, CT 06114
Tel: (860) 296-3457
Fax: (860) 296-0676
Juris No. 419987
Email: mmichaud@cicchielloesq.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
-------------------------------------------------------x
JOHN JAMES STAVOLA           :        CASE ACTION NO.
Plaintiff                    :
                             :        3:17-cv-00087
                             :
                             :
SEI/AARON'S INC., and MARC   :
DEBROISSE                    :
            Defendant        :        JULY 25, 2017
-------------------------------------------------------x
```

<u>**STATEMENT OF AMOUNT IN DEMAND**</u>

The Plaintiff herein certifies that the amount in demand is in excess of 15,000.00,

exclusive of interest and costs.


                                    THE PLAINTIFF
                                    JOHN JAMES STAVOLA


                                    By: _//s// Megan L Michaud //s//__
                                    Megan L Michaud, Esq.
                                    Cicchiello & Cicchiello LLP
                                    364 Franklin Avenue
                                    Hartford, CT 06114
                                    Tel: (860) 296-3457
                                    Fax: (860) 296-0676
                                    Juris No. 419987
                                    Email: mmichaud@cicchielloesq.com

## ELECTRONIC CERTIFICATION OF SERVICE

I hereby certify that on July 25, 2017, a copy of the foregoing Appearance was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated in the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

By:   /s/ Megan L Michaud /s/
       Megan L Michaud Esq. (ct28813)

# **EXHIBIT A**

# STATE OF CONNECTICUT
## COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

John James Stavola
**COMPLAINANT**

vs.

CHRO No. 1730118
EEOC No. N/A

SEI/Aarons and Marc Debroisse
**RESPONDENT**

## RELEASE OF JURISDICTION

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint. The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred, in which the Respondent transacts business or in which the Complainant resides. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action brought pursuant to this release must be served on the Commission at ROJ@ct.gov or at 450 Columbus Blvd., Suite 2, Hartford, CT 06103 at the same time all other parties are served. Electronic service is preferred. THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.

DATE: December 21, 2016

Tanya A. Hughes, Executive Director

John James Stavola – johnnystavs44@gmail.com
Emanuele R. Cicchiello – manny@cicchielloesq.com
Patricia Boyce Iassogna – efiling@bfarrelllaw.com